## PIERCE *v.* TENNESSEE COAL, IRON AND RAILROAD COMPANY.

| 173 | 1 |
|-----|-----|
| L-ed | 591 |
| f178 | 15 |

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 174. Argued and submitted January 19, 20, 1899. — Decided February 20, 1899.

An agreement in writing between a mining company and a machinist stated that while.in its employ he was seriously hurt under circumstances which he claimed, and it denied, made it liable to him in damages; that six months after the injury, both parties being desirous of settling his claim for damages, the company agreed to pay him regular wages and to furnish him with certain supplies while he was disabled, and carried out that agreement for six months, at the end of which, after he had resumed work, it was agreed that the company should give him such work as he could do, and pay him wages as before his injury, and this agreement was kept by both parties for a year; and then, in lieu of the previous agreements, a new agreement was made that his wages "from this date" should be a certain sum monthly, and he should receive certain supplies, and he on his part released the company from all liability for his injury, and agreed that this should be a full settlement of all his claims against the company. *Held*, that the last agreement was not terminable at the end of any month at the pleasure of the company, but bound it to pay him the wages stipulated, and to furnish him the supplies agreed, so long as his disability to do full work continued; and that, if the company discharged him from its service without cause, he was entitled to

elect to treat the contract as absolutely and finally broken by the company, and, in an action against it upon the contract, to introduce evidence of his age, health and expectancy of life, and, if his disability was permanent, to recover the full value of the contract to him at the time of the breach, including all that he would have received in the future as well as in the past if the contract had been kept, deducting however any sum that he might have earned already or might thereafter earn, as well as the amount of any loss that the defendant sustained by the loss of his services without its fault.

THIS was an action brought January 22, 1892, in the circuit court of Jefferson County in the State of Alabama, by Frank H. Pierce, a citizen of the State of Alabama, against the Tennessee Coal, Iron and Railroad Company, a corporation of the State of Tennessee, doing business in the State of Alabama, upon a written contract, signed by the parties, and in the following terms:

"Pratt Mines, Ala. 4th June, 1890. Whereas I, F. H. Pierce, while in the employ of the Tennessee Iron, Coal and Railroad Company, Pratt Mines Division, as a machinist, was seriously hurt by a trip of tram cars on the main slope of the mine known as Slope No. 2, and operated by the Tennessee Coal, Iron and Railroad Company, under circumstances which I claim render the said company liable to me for damages; but whereas they disclaim any liability for said accident or the injuries to me resulting from same; and both parties being desirous of settling and compromising said matter; and whereas the said Tennessee Coal, Iron and Railroad Company did make me a proposition on the —— day of November, 1888, said accident having occurred on the 21st day of May, 1888, that they would furnish me such supplies from the commissary at No. 2 prison, as I might choose to take, pay me regular wages while I was disabled, and give me my coal and wood for fuel at my dwelling, and the benefit of the convict garden at No. 2; and whereas said proposition was accepted by me, and carried out by the said company; and whereas in May, 1889, after I had resumed work, a further proposition was made to me to give me work, such as I could do, paying me therefor the wages paid me before said accident, that is, $60 per month, and in addition free house rent, [or in lieu of

house rent a certain amount of supplies from the convict commissary at No. 2 prison, which supplies were to amount to about the sum paid by me for house rent;] and whereas said agreement has been faithfully kept by both parties; and whereas on the 4th day of June, 1890, it is mutually agreed between myself and the said company that it will be better to give me the house rent than the supplies of about equal amount from the commissary; now therefore it is agreed, in view of the above propositions, which have been faithfully carried out, that my wages from this date are to be $65 a month, and in addition I am to have, free of charge, my coal and wood necessary for my household use at my dwelling, and the same benefit from the garden as is had by others who are allowed the garden privilege; and I on my part agree and bind myself to release the said company from any and all liability for said accident, or from the injuries resulting to me from it or from the effects of it, and agree that this is to be a full and satisfactory settlement of any and all claims which I might have against said company."

The complaint set out the contract, except the clause above printed in brackets; and alleged that by this contract the defendant became liable to pay the plaintiff monthly during his life the wages therein stipulated, and to furnish him with coal and wood and allow him the privilege of the garden, as therein agreed; that the plaintiff had always been ready and offered to do for the defendant such work given to him as he was able to do, and had labored at the same for such reasonable time as he was able to work and bound to work under this contract; that by the injuries received by him from the accident mentioned therein he was permanently disabled in the use of his legs and hands, and otherwise so injured as to be incapacitated to do more work than he had done and had offered to do; but that the defendant, without any reasonable ground for so doing, abandoned the contract and refused to carry it out, claiming that the defendant was under no obligation to pay to the plaintiff the wages therein stipulated longer than suited its pleasure; and had wholly and purposely disregarded and refused to abide by the obligations of the contract

for the period of six months next before the commencement of the suit, and had entirely abandoned the contract and discharged the plaintiff from its service. The plaintiff claimed damages, in the sum of $50,000, for the defendant's breach and abandonment of the contract.

The defendant demurred to the complaint, upon the ground that the contract set out therein was one of hiring, terminable at the will of either party, and not one of hiring for life, as alleged in the complaint; and that it appeared, from the obligations of the complaint, that the defendant, in terminating the contract of hiring, had only exercised its legal right under the contract. The court sustained the demurrer, and, the plaintiff declining to amend his complaint, rendered judgment for the defendant; and the plaintiff on February 21, 1894, appealed from that judgment to the Supreme Court of Alabama.

The record transmitted to this court does not show any further proceedings in the Supreme Court of Alabama. But the official reports of its decisions show that at November term, 1895, it reversed that judgment, and remanded the case to the county court. *Pierce* v. *Tennessee Coal Co.*, 110 Alabama, 533. And the record before this court necessarily implies that fact, by setting forth that in March, 1896, on motion of the defendant, suggesting that from prejudice and local influence it would not be able to obtain justice in the state courts, the case was removed from the county court into the Circuit Court of the United States for the Southern Division of the Northern District of Alabama; and a motion to remand the case to the state court was made by the plaintiff (on what ground did not appear in the record) and was overruled.

In the Circuit Court of the United States, on January 4, 1897, the following proceedings took place: The demurrer to the complaint was renewed by the defendant, and overruled by the court. The plaintiff then amended his complaint by inserting, in the copy of the contract set forth therein, the words above printed in brackets; and a demurrer to the amended complaint was filed and overruled. In answer to this complaint the defendant filed two pleas: 1st. A denial of each and every allegation of the complaint; 2d. "The de-

fendant, for further answer to the complaint, says that the plaintiff, under and by the terms of the contract set out in the complaint, contracted to perform for the defendant during the term thereof such service as he was able to perform, in consideration for the promises made by the defendant therein; and the defendant avers that the plaintiff thereafter became able to perform service for the defendant, and did in fact perform such service for some time thereafter, and that, while engaged in the performance of such service, the plaintiff voluntarily and without excuse therefor refused to further perform such service as he was able to perform and was in fact performing for the defendant, as required by said contract, and the defendant thereupon discharged the plaintiff from its service; and the defendant avers that the plaintiff failed to comply with the conditions imposed upon him by said contract." The plaintiff joined issue on the first plea; and demurred to the second plea, upon the ground that it did not go to the whole consideration of the contract, and was no answer to the entire action; and the court sustained his demurrer. The defendant, for further answer, and by way of recoupment, pleaded that on May 3, 1891, the plaintiff, voluntarily and without excuse, refused to perform such labor as he was able to perform and was in fact performing for the defendant, as required by the contract; and since that time had continued to refuse to perform and had not in fact performed such service, or any part thereof; to the damage of the defendant in the sum of $50,000.

A bill of exceptions, tendered by the plaintiff and allowed by the court, showed that at the trial before the jury the following proceedings were had:

The plaintiff introduced and read in evidence the contract sued on, and introduced evidence tending to prove the allegations of the complaint. He also offered evidence that, at the time of his discharge by the defendant from its employment in May, 1891, he was fifty-five years of age, and that he was then and had since been in good health, and addicted to no habits of drinking or otherwise, affecting his health and expectancy of life; and introduced the American tables of mortality

used by insurance companies, showing his expectancy of life at the time of his discharge, and at the time of the trial.

But the court ruled that no recovery could be allowed on the contract, beyond the instalments of wages due and in default up to the date of the trial; and, upon the defendant's motion, excluded all evidence of the plaintiff's age, health and expectancy of life, "on the ground that it was immaterial and irrelevant, and because damages for the expectancy of life was a matter too vague and uncertain to be allowed."

The plaintiff duly excepted to the ruling and to the exclusion of evidence; and, to present the same point, asked the court to give, and duly excepted to its refusal to give, the following instruction to the jury: "If the defendant, after making the contract sued on, and before the suit, refused further to pay the plaintiff and to furnish the articles stipulated to be furnished, and refused to employ the plaintiff, and discharged him, the plaintiff is entitled to the full benefit of his contract, which is the present value of the money agreed to be paid and the articles to be furnished under the contract for the period of his life, if his disability is permanent, less such sum as the jury may find the plaintiff may be able to earn in the future, and may have been able heretofore to earn, and less such loss as the defendant may have sustained from the loss of the plaintiff's service without the defendant's fault."

The defendant also tendered and was allowed a bill of exceptions, presenting substantially, though in different form, the questions involved in the plaintiff's case, and the contents of which therefore need not be particularly stated.

The jury returned a verdict for the plaintiff in the sum of $5893, upon which judgment was rendered. Each party sued out a writ of error from the Circuit Court of Appeals for the Fifth Circuit.

That court was of opinion that the contract sued on was for "an employment by the month, and therefore, like every other such employment, subject to be discontinued, at the will of either party, at the expiration of any month, or at any time for adequate cause;" and consequently that there was error

in overruling the demurrer to the complaint; and upon that ground, without passing upon any other question in the case, reversed the judgment of the Circuit Court of the United States, and remanded the case to that court for further proceedings, Judge Pardee dissenting.  52 U. S. App. 355, 365. The plaintiff thereupon applied for and obtained a writ of certiorari from this court.  168 U. S. 709.

*Mr. Walker Percy* for the Tennessee Coal, Iron and Railroad Company.  *Mr. William I. Grubb* was on his brief.

*Mr. W. A. Gunter*, for Pierce, submitted on his brief.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

In the Circuit Court of the United States, a verdict and judgment were rendered for the plaintiff for a less amount of damages than he claimed; and each party alleged exceptions to rulings and instructions of the judge, and sued out a writ of error from the Circuit Court of Appeals.  That court held that the defendant's demurrer to the complaint should have been sustained, and therefore reversed the judgment of the Circuit Court, and remanded the case for further proceedings.  A writ of certiorari to review the judgment of the Circuit Court of Appeals was thereupon applied for by the plaintiff, and was granted by this court.

The fundamental question in this case is whether the contract in suit, made by the parties on June 4, 1890, is a contract intended to last during the plaintiff's life, or is a mere contract of hiring from month to month, terminable at the pleasure of either party at the end of any month.

The facts bearing upon this question, as appearing upon the face of this contract, are as follows: In May, 1888, the plaintiff, while employed as a machinist in the defendant's coal mine in Alabama, was seriously hurt by a trip of tram cars on the main slope of the mine, under circumstances which the plaintiff claimed, and the defendant denied, rendered it liable to him in damages.  The parties were desirous of settling and

compromising the plaintiff's claim for damages for the injuries, and had repeated negotiations with that object. In November, 1888, they made an agreement (which does not appear to have been reduced to writing) by which the defendant was to pay the plaintiff regular wages while he was disabled, and also to furnish him with such supplies as he might choose to get from a commissary, and to give him coal and wood for fuel at his dwelling house, and the benefit of a garden belonging to the defendant. The agreement was carried out by the defendant until May, 1889, and was then, after the plaintiff had resumed work, modified by stipulating that the defendant should give the plaintiff such work as he could do, should pay him therefor wages of $60 a month, as before the accident, and should give him the rent of his house, or, in lieu of house rent, an equivalent amount of supplies from the commissary ; and the agreement, as so modified, was faithfully kept by both parties until June 4, 1890. Finally, on that day, the parties entered into the written contract sued on, by which, after reciting the plaintiff's claim for damages and the earlier agreements, it was agreed "in view [evidently a misprint for " in lieu"] of the above propositions, which have been faithfully carried out," that the plaintiff's " wages from this date are to be $65 a month," (the increase of wages being apparently intended as an equivalent for the provision, now omitted, for house rent or supplies from the commissary,) and that he was to have, free of charge, his fuel and the benefit of the garden ; and the plaintiff, on his part, agreed to release the defendant from any and all liability for the accident, or for the injuries resulting to him from it or from the effects of it, and that this should be a full and satisfactory settlement of all claims which he might have against the defendant.

The effect of the provisions and recitals of the contract sued on may be summed up thus : The successive agreements between the parties were all made with a view to settle and compromise the plaintiff's claim against the defendant for personal injuries, caused to him by the defendant's cars while he was in its service as a machinist, and seriously impairing his ability to work. By each agreement, the defendant was

to pay him certain wages, and to furnish him with certain supplies. The supplies to be furnished were evidently a minor consideration, and require no particular discussion. The more important matter is the wages. The defendant, at first, agreed to pay the plaintiff "regular wages while he was disabled." The agreement, in that form, would clearly last so long as he continued to be disabled, and could not have been put an end to by the defendant without the plaintiff's consent. By the next succeeding agreement, made after the plaintiff had resumed work, the defendant was "to give him work, such as he could do, paying him therefor the wages paid before said accident, that is, $60 a month." That agreement must be considered as a mere modification of the first, requiring the plaintiff to do such work as he could do, but showing that he was still much disabled by his injuries. By the final agreement in writing of June 4, 1890, after reciting the plaintiff's claim for damages for these injuries, as well as the earlier agreements, his wages were increased by a stipulation that his "wages from this date are to be $65 a month," and he expressly released the defendant from all liability for the injuries resulting to him from the accident or from the effects thereof, and agreed that this should be a full and satisfactory settlement of all his claims against the defendant.

The only reasonable interpretation of this contract is that the defendant promised to pay the plaintiff wages at the rate of $65 a month, and to allow him his fuel and the benefit of the garden so long as his disability to do full work continued; and that, in consideration of these promises of the defendant, the plaintiff agreed to do such work as he could, and to release the defendant from all liability upon his claim for damages for his personal injuries. An intention of the parties that, while the plaintiff absolutely released the defendant from that claim the defendant might at its own will and pleasure cease to perform all the obligations which were the consideration of that release, finds no support in the terms of the contract, and is too unlikely to be presumed. *Carnig* v. *Carr*, 167 Mass. 544, 547.

The Supreme Court of Alabama, when the case at bar was before it on appeal from the county court, and before the removal of the case into the Circuit Court of the United States, expressed the opinion that " the contract is sufficiently definite as to time, and bound the defendant to its performance, so long as the plaintiff should be disabled by reason of the injuries he received, which, under the averment that he was permanently disabled, will be for life;" and upon that ground reversed the judgment of the county court sustaining the demurrer to the complaint, and remanded the case to that court. 110 Alabama, 533, 536. As we concur in that opinion, it is unnecessary to consider how far it should be considered as binding upon us in this case. See *Williams* v. *Conger*, 125 U. S. 397, 418 ; *Gardner* v. *Michigan Central Railroad*, 150 U. S. 349 ; *Great Western Tel. Co.* v. *Burnham*, 162 U. S. 339, 344, and cases cited; *Moulton* v. *Reid*, 54 Alabama, 320.

It follows that the judgment of the United States Circuit Court of Appeals in this case was erroneous, and must be reversed.

It appears to us to be equally clear that the Circuit Court of the United States erred in excluding the evidence offered by the plaintiff, in restricting his damages to the wages due and unpaid at the time of the trial, and in declining to instruct the jury as he requested.

Upon this point, the authorities are somewhat conflicting; and there is little to be found in the decisions of this court, having any bearing upon it, beyond the affirmance of the general propositions that " in an action for a personal injury the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning, by the wrongful act of the defendant," and, " in order to assist the jury in making such an estimate, standard life and annuity tables, showing at any age the

probable duration of life, and the present value of a life annuity, are competent evidence;" *Vicksburg &c. Railroad* v. *Putnam,* 118 U. S. 545, 554; and that in an action for breach of contract "the amount which would have been received, if the contract had been kept, is the measure of damages if the contract is broken." *Benjamin.* v. *Hilliard,* 23 How. 149, 167.

But the recent tendency of judicial decisions in this country, in actions of contract, as well as in actions of tort, has been towards allowing entire damages to be recovered, once for all, in a single action, and thus avoiding the embarrassment and annoyance of repeated litigation. This especially appears by well considered opinions in cases of agreements to furnish support or to pay wages, a few only of which need be referred to.

In *Parker* v. *Russell,* 133 Mass. 74, the declaration alleged that, in consideration of a conveyance by the plaintiff to the defendant of certain real estate, the defendant agreed to support him during his natural life; and that the defendant accepted the conveyance, and occupied the real estate, but neglected and refused to perform the agreement. The plaintiff proved the contract; and introduced evidence that the defendant did support him in the defendant's house for five years, and until the house was destroyed by fire, and had since furnished him no aid or support. The jury were instructed that "if the defendant, for a period of about two years, neglected to furnish aid or support to the plaintiff, without any fault of the plaintiff, the plaintiff might treat the contract as at an end, and recover damages for the breach of the contract as a whole; and that the plaintiff would be entitled to recover compensation for the past failure of the defendant to furnish him aid and support, and full indemnity for his future support." Exceptions taken by the defendant to this instruction were overruled by the Supreme Judicial Court of Massachusetts. Mr. Justice Field, in delivering judgment, said: "In an action for the breach of a contract to support the plaintiff during his life, if the contract is regarded as still subsisting, the damages are assessed up to the

date of the writ, and not up to the time when the verdict is rendered. But if the breach has been such that the plaintiff has the right to treat the contract as absolutely and finally broken by the defendant, and he so elects to treat it, the damages are assessed as of a total breach of an entire contract. Such damages are not special or prospective damages, but are the damages naturally resulting from a total breach of the contract, and are suffered when the contract is broken, and are assessed as of that time. From the nature of the contract, they include damages for not performing the contract in the future, as well as in the past. The value of the contract to the plaintiff at the time it is broken may be somewhat indefinite, because the duration of the life of the plaintiff is uncertain; but uncertainty in the duration of a life has not, since the adoption of life tables, been regarded as a reason why full relief in damages should not be afforded for a failure to perform a contract which by its terms was to continue during life. When the defendant, for example, absolutely refuses to perform such a contract, after the time for entering upon the performance has begun, it would be a great hardship to compel the plaintiff to be ready, at all times during his life, to be supported by the defendant, if the defendant should at any time change his mind; and to hold that he must resort to successive actions from time to time to obtain his damages piecemeal, or else leave them to be recovered as an entirety by his personal representatives after his death. *Daniels* v. *Newton*, 114 Mass. 530, decides that an absolute refusal to perform a contract, before the performance is due by the terms of the contract, is not a present breach of the contract for which any action can be maintained; but it does not decide that an absolute refusal to perform a contract, after the time and under the conditions in which the plaintiff is entitled to require performance, is not a breach of the contract, even although the contract is by its terms to continue in the future." 133 Mass. 75, 76. It is proper to remark that the point decided in *Daniels* v. *Newton* was left open in *Dingley* v. *Oler*, 117 U. S. 490, 503, and has never been brought into judgment in this court.

So in *Schell* v. *Plumb*, 55 N. Y. 592, the action was by a woman, for a breach of an oral contract, by which the defendant's testator agreed to support the plaintiff during her life, and she agreed to render what services she could towards paying for her support. The contract was carried out for some years; and the defendant then turned her away, and refused to support her. At the trial the judge, against the defendant's objection, admitted in evidence the Northampton tables of life annuities, to show the probabilities of life at the plaintiff's age; and instructed the jury that, if the plaintiff was turned out in violation of the contract, without any misconduct on her part, she was entitled to recover damages from the breach of the contract to the time of trial, deducting what wages she might have earned during that time; and also to recover for her future support and maintenance, as to which the jury were instructed as follows : " Your verdict is all she can ever recover, no matter how long she may live. That ends the contract between these parties; and you will decide, considering her age, her health, her condition in life, and the circumstances under which she is placed, how long she will probably live, and how much services she can probably perform in the future, and say how much more it will cost her to support herself than she will be able to earn, and allow her to recover for such sum." The verdict was for the plaintiff, and judgment was rendered thereon. The defendant appealed, contending that, if the plaintiff was entitled to recover at all, she could only recover for the time prior to the commencement of the action, or, at most, to the time of trial; and that, as to the future, it was impossible to ascertain the damages, as the duration of life was uncertain, and a further uncertainty arose from the future physical condition of the person. But the Court of Appeals, in an opinion delivered by Judge Grover, affirmed the judgment, saying: " Here the contract of the testator was to support the plaintiff during her life. That was a continuing contract during that period; but the contract was entire, and a total breach put an end to it, and gave the plaintiff a right to recover an equivalent in damages, which equivalent was the present value of her contract." " It may be

further remarked that in actions for personal injuries the constant practice is to allow a recovery for such prospective damages as the jury are satisfied the party will sustain, notwithstanding the uncertainty of the duration of his life and other contingencies which may possibly affect the amount." 55 N. Y. 597, 598.  See also *Remelee* v. *Hall*, 31 Vermont, 582 ; *Sutherland* v. *Wyer*, 67 Maine, 64.

In *Eastern Tennessee &c. Railroad* v. *Staub*, 7 Lea, 397, the facts were singularly like those in the case at bar.  The plaintiff, having, while in the employ of the defendant railroad company as an engineer, and in the discharge of his duties as such, received serious injuries by a collision between his locomotive engine and another train, and having brought an action to recover damages for those injuries, an agreement, by way of compromise, was entered into, by which, in consideration of the plaintiff's agreeing to dismiss his suit, the defendant agreed to pay the costs thereof and the plaintiff's attorney's fee and physician's bills ; and further agreed to retain him in its employ, the plaintiff working when, in his own opinion, he was able to do so, and performing only such services as in his disabled condition he might be able to perform ; the defendant agreed to pay him a certain specified sum per day, regular wages paid to machinists, whether he labored or not ; and the contract was to continue as long as the injuries should last. For some time after this agreement, the plaintiff continued, at intervals, to perform light work for the defendant, receiving pay, however, only for the time he actually worked ; and the defendant then denied any liability under the agreement, and refused to allow the plaintiff to continue the service under it.  The Supreme Court of Tennessee held that the plaintiff was entitled to recover in one action the entire damages, not only for wages already due and unpaid, but also damages to the extent of the benefit that he would probably have realized under the contract; and, speaking by Judge McFarland, said : "It is a mistake to suppose, as has been done in argument, that because, in estimating the damages, we look to the probable course of events after the suit is brought, we are therefore allowing damages that accrue after the action is

brought.   The right to recover damages accrues upon the breach of the contract.   But the rule of. damages in such cases is what would have come to the plaintiff under the contract had it continued, less whatever the plaintiff might earn by the exercise of reasonable and proper diligence on his part; and, of course, in ascertaining this, we must look to a time subsequent to the breach, and in some cases to a time subsequent to the bringing of the suit.   Nor is it any objection to the recovery, that in this case the damages are difficult to ascertain, depending upon contingent and uncertain events.   There are many cases in which the damages are uncertain and difficult to ascertain, and, in fact, cannot be ascertained with certainty, but this has never been regarded as a sufficient reason for denying all relief."   7 Lea, 406.

These cases appear to this court to rest upon sound principles, and to afford correct rules for the assessment of the plaintiff's damages in the case at bar.

The legal effect of the contract sued on, as has been seen, was that the defendant promised to pay the plaintiff certain wages, and to furnish him with certain supplies, so long, at least, as his disability to work should continue; and the consideration of these promises of the defendant was the plaintiff's agreement to do for the defendant such work as he was able to do, and his release of the defendant from all liability in damages for the personal injuries which had caused his disability.

The complaint alleged, and the plaintiff at the trial introduced evidence tending to prove, that by those injuries he was permanently disabled; that he was always ready and offered to do for the defendant such work as he was able to do, and labored at that work for such reasonable time as he was able to work and bound to work under the contract; and that the defendant, without any reasonable ground therefor, denied its obligation to pay the plaintiff the stipulated wages longer than suited its pleasure, and, for six months before the commencement of the action, disregarded the contract, and refused to abide by it, and entirely abandoned the contract, and dismissed the plaintiff from its services.

If these facts were proved to the satisfaction of the jury, the case would stand thus: The defendant committed an absolute breach of the contract, at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see if the defendant would change its decision, and take him back into its service; or to resort to successive actions for damages from time to time; or to leave the whole of his damages to be recovered by his personal representative after his death. But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract; and to recover all that he would have received in the future, as well as in the past, if the contract had been kept. In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract. The difficulty and uncertainty of estimating damages that the plaintiff may suffer in the future is no greater in this action of contract, than they would have been if he had sued the defendant, in an action of tort, to recover damages for the personal injuries sustained in its service, instead of settling and releasing those damages by the contract now sued on.

In assessing the plaintiff's damages, deduction should, of course, be made of any sum that the plaintiff might have earned in the past or might earn in the future, as well as the amount of any loss that the defendant had sustained by the loss of the plaintiff's services without the defendant's fault. And such deduction was provided for in the instruction asked by the plaintiff and refused by the judge.

The questions of law presented by the defendant's bill of exceptions, allowed by the Circuit Court of the United States, are substantially like those above considered, and require no further notice.

The result is, that the judgment of the Circuit Court of Appeals, sustaining the demurrer to the complaint, and reversing the judgment of the Circuit Court of the United States, must be reversed; that the judgment of the Circuit Court of the

United States must also be reversed, because of the ruling excepted to by the plaintiff; and that the case must be remanded to that court, with directions to set aside the verdict and to order a new trial.

> *Judgments of the Circuit Court of Appeals and of the Circuit Court of the United States reversed, and case remanded to said Circuit Court for further proceedings in conformity with the opinion of this court.*