J. M. GUFFEY PETROLEUM CO. v. COASTWISE TRANSP. CO.

COASTWISE TRANSP. CO. v. J. M. GUFFEY PETROLEUM CO.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

Nos. 208, 209.

SHIPPING (§ 58*)—BREACH OF CHARTER—LIABILITIES.

The owner of a schooner chartered her for six months, with an option of renewal for four years, and the option was exercised by the charterer's assignee, which became, and was treated as, the charterer. The vessel was employed in carrying petroleum in bulk, and the charter provided that the charterer should fit her with wooden bulkheads and make other alterations necessary to fit her for the service. Such fittings were put in, but the bulkheads and expansion trunks which were placed above the main tanks to feed and keep them full were never sufficiently tight, and leaked more and more with use, until a survey showed that the vessel was unseaworthy to carry oil in her then condition, and in accordance with the report of the surveyors the owner demanded her equipment with steel bulkheads and expansion trunks. A day or two later it modified this demand by requiring that the wooden fittings be made tight, and on the refusal of the charterer to comply withdrew the vessel from the charter. Held, that such action was justified, and that the owner was entitled to recover damages for breach of the charter, including loss of earnings for the unexpired term.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 58.*]

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the J. M. Guffey Petroleum Company against the Coastwise Transportation Company, and cross-suit by the latter

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

against the former company. Decree for respondent in the first suit, and libelant appeals. Decree for libelant in second suit, and both parties appeal. Decree in first suit affirmed, and in second suit modified.

For opinion below, see 168 Fed. 379.

Wing, Putnam & Burlingham (Charles C. Burlingham, of counsel), for libelant.

Edward E. Blodgett and J. Parker Kirlin, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. May 16, 1906, by a charter party binding the parties, their successors and assigns, the Coastwise Transportation Company agreed to let and Unique Shipping Company agreed to hire the schooner William L. Douglas for the term of six months beginning at noon on April 30th for the hire of $5,000 per calendar month. The charter party was not a demise of the vessel. The other material provisions of the charter were as follows:

"At the expiration of six months the charterer shall have the privilege of renewing this charter for the period of four years, all the terms and conditions to be the same, except that the charterer shall have the right to terminate said charter at any time upon giving thirty days' notice of its intention so to do. The vessel is to be employed in carrying bulk oil from Port Arthur, Texas, or Sabine Pass, Texas, or any other safe port in the Gulf of Mexico, to New York, Philadelphia, Boston, or Baltimore, as charterer may elect. Charterer is to, fit out the vessel with wooden bulkheads so as to enable her to carry the cargo, and make any other alterations necessary to fit the vessel for the trade. The owner is to * * * maintain her in a thoroughly efficient state (with the exception of the cargo arrangements) during the service. Payment of the said hire to be made in cash, in New York, at the end of each month, and in default of such payment or payments as herein specified the owner has the privilege of withdrawing the said vessel from the service of the charterer. When the charter has expired the charterer agrees to remove all bulkheads, piping, and other things he has added to the vessel, and properly clean the holds before redelivering her."

The charterer availed himself of the extension to October 30, 1910. December 6, 1906, the Unique Shipping Company assigned the charter to one Phillips. July 1, 1907, Phillips assigned it to the J. M. Guffey Petroleum Company, and from that time forward the Coastwise Transportation Company, owners, dealt with it as charterer. The charterer employed the vessel by towing her, manned by the owner, between New York, Philadelphia, Boston, or Baltimore and Port Arthur or Sabine Pass, Tex., down light and returning with oil.

The vessel was originally constructed with four steel bulkheads, one forward and one aft and two amidships, making what was called the deep tank. The charterer, in fitting the vessel to carry oil, put in a longitudinal wooden bulkhead fore and aft of the deep tank, reaching from the keel to the between-decks, and four transverse wooden bulkheads, thus making six additional tanks on each side of the vessel from the keel to the between-decks. These wooden bulkheads were set in cement in the floor and between the frames on the sides of the vessel. A wooden expansion trunk, also set in cement, was placed in the between-decks over each tank, the purpose of which was to hold oil and

so keep the tank always full, and at the same time allow for any expansion due to change of temperature.

The District Judge found that the wooden bulkheads put in by the charterer were never entirely tight, and notwithstanding occasional repairs leaked more and more, so that the oil escaped from the expansion trunks into the between-decks, and the separate tanks below deck were not kept tight. This he found to exist to such an extent in August, 1907, upon the return of the vessel from Texas to New York, as to make it dangerous to carry liquid cargo in her. It was, as he found, clearly the duty of the charterer to keep the bulkheads in a condition to enable the vessel to carry bulk oil safely. After some correspondence and negotiation, in which the owners insisted upon steel fittings being put in by the charterer, which the charterer refused to do, the owners called a survey August 23, 1907. Three surveyors appointed by them reported that it was unsafe to carry oil in the vessel as she was; that to make her safe and seaworthy for liquid cargo steel bulkheads and expansion trunks should be fitted; and they recommended that the vessel be not allowed to go to sea with liquid cargo until this had been done. On the same day the owners wrote to the charterer as follows:

"Inclosed herewith please find a copy of report made to us by surveyors after the inspection of above-named vessel for the purpose of ascertaining her seaworthiness and fitness to carry liquid cargo in bulk; and, in view of the recommendations contained therein and the fact that the crew refuses to sail in the vessel in her present condition, we cannot allow said Schr. Wm. L. Douglas to proceed to sea until the aforesaid recommendations have been complied with."

The charterer in reply immediately notified the owners that it would be ready to tow the Douglas as usual to Texas at 3 p. m., and would wait 24 hours for her, and that if she did not go then the towing steamer (also an oil carrier) would proceed to sea without her. The owners refused to let the vessel go and the towing steamer proceeded on her voyage. It is quite clear that neither party wished to terminate the charter and that each was trying to hold the other liable for breach of it; the owners on the ground that the charterer had failed to keep the vessel seaworthy in respect to her cargo fittings, and the charterer on the ground that the vessel was seaworthy and the owners had no right to demand steel when the charter called for wooden fittings.

Negotiations with a view to settling these disputes followed for some days, without result. September 7, 1907, the charterer filed a libel against the owners, claiming $50,000 estimated loss in getting other tonnage for the unexpired term of the charter and $30,000 damage for conversion of their oil fittings. September 15th the owners began taking out the oil fittings, which they completed October 23d and rechartered the vessel for coal. It was their duty to reduce the loss as much as possible by getting employment for the vessel, and we do not think they were obliged to go to the expense of refitting her for the oil trade, which is but a limited market. November 29th the owners filed a libel against the charterer for the cost of removing the oil fittings and estimated loss of earnings for the unexpired term of the charter, aggregating $100,000.

The District Judge dismissed the libel of the charterer and entered a decree in favor of the owners for $17,370.41, consisting principally of the cost of removing the oil fittings and charter hire down to 30 days from October 3d, less the earnings received under the coal charter. He treated the conduct of the charterer as amounting to a 30 days' notice of an intention to terminate the charter, as provided therein. It would, in our opinion, be just as reasonable to say that the conduct of the owners amounted to a withdrawal of the vessel because of the failure of the charterer to pay hire August 31st, as the charter entitled them to do. The truth is that neither party wished to terminate the charter. Each, as its libel shows, claimed the benefit of the whole term and charged the other for the complete breach of it. If the charterer intended to terminate the charter, it was bound to remove its fittings; but this it refused to do, and, on the contrary, is asking to be made good for the unexpired term, on the ground that the owners had made a complete breach of the whole contract.

We think the charterer's libel was properly dismissed. The only ground for holding the owners liable would be that on August 23d and 24th they demanded a wrong remedy for a rightful claim, viz., that the charterer should make the vessel seaworthy by putting in steel fittings instead of making the wooden fittings reasonably oil-tight. If this prejudiced the charterer, they might be held strictly to the claim as made; but it did not, because the vessel, which had been found to have been unfit for liquid cargo, was rightly detained. Moreover, the next day, August 25th, and in several subsequent conversations, the owners abandoned the claim as made, and said that all they required was that the charterer should make the wooden bulkheads reasonably oil-tight. They were also willing that the charterer should call a survey and have the question of the vessel's seaworthiness further investigated. The substance of their claim was that the vessel had become unfit to carry oil, and we see nothing to estop them from seasonably abandoning the form in which they presented it August 23d and 24th before the situation of any one had substantially changed. The charterer, however, would do nothing, standing firmly on its position that the owners had made a complete breach of the whole contract August 23d and 24th by refusing to let the Douglas go to sea.

We agree with the District Judge that this refusal was rightful. The decree of the court below is correct, except that the owners should have been permitted to prove loss of earnings for the unexpired term of the charter (Pierce v. R. R. Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591), and the court below is directed to modify it in this respect.

As so modified, the decree is affirmed, with costs.