## VIGLAS v. NEW YORK LIFE INS. CO.
### No. 3012.

Circuit Court of Appeals, First Circuit.

July 13, 1935.

Harris J. Booras, of Boston, Mass. (John A. Edgerly, of Boston, Mass., on the brief), for appellant.

F. H. Nash, of Boston, Mass. (John Barker, Jr., of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal from a judgment for the defendant which was entered after a demurrer to the plaintiff's declaration had been sustained by the District Judge. The question presented is whether the plaintiff's declaration in its final form stated a cause of action within the jurisdiction of the federal court. There was the necessary diversity of citizenship.

In count I of the declaration the plaintiff claimed $1,408, as the cash surrender value of the policy in question at a future

date. This amount is less than the jurisdictional requirement. The parties correctly assumed that there is no jurisdiction in the federal court unless count II stated a good cause of action. This count is as follows:

"The plaintiff says that on or about the seventh day of February, 1927, he entered into a contract of insurance with the defendant, a copy of which policy of insurance is filed herewith and marked 'Exhibit A.' That, as appears by said contract, the plaintiff was to pay the defendant the sum of $76 annually as premium, in semi-annual payments of $38 each on the seventh days of February and August of each year, for a period of twenty years, or until death, or until the happening of total disability, as therein provided; that the face amount of said policy was $2,000; that under the terms of said contract the plaintiff was to pay premiums for twenty years, which premiums were to be waived by the company in accordance with certain provisions in said contract; the policy was to be in full force and effect during the entire life of the plaintiff; that the plaintiff, at his election, after the policy was in effect for three years, could claim the cash surrender value of the policy as therein provided.

"The plaintiff further says that on or about September 11, 1931, he became permanently and totally disabled within the terms and provisions of the contract; that in addition to his being totally and permanently disabled, as provided in the first clauses of the total and permanent disability section of said contract, the plaintiff says he lost the total and irrecoverable use of one hand and one foot; that because of said total and permanent disability, of which the plaintiff made due proof, the defendant commenced paying the plaintiff disability benefits on October 11, 1931, at the rate of $20 per month, in accordance with said contract, and continued paying said monthly benefits up to and including July 11, 1933, and gave the plaintiff statements waiving the payment of the premiums due on February 7, August 7, 1932, and February 7, 1933; that on or about September 1, 1933, the defendant refused to make the monthly payment due August 11, 1933, and refused to waive the semi-annual premium due August 7, 1933, asserting to the plaintiff as its ground for such refusal that since it appeared to the defendant that for some time past the plaintiff had not been continuously totally disabled within the meaning of the disability benefit provision of the policy, the defendant would make no further monthly disability payments, and that the premiums due on and after August 7, 1933, would be payable in conformity with the terms of the contract. Upon the expiration of the days of grace after August 7, 1933, for the payment of the semi-annual premium, the defendant, on or about September 19, 1933, declared the policy as lapsed upon its records, the premiums not having been waived by the defendant nor paid by the plaintiff. That thereupon, the plaintiff having been continuously, from September 11, 1931, totally and permanently disabled, and also being then totally and permanently disabled within the provisions of the contract, and that he having on his part complied with, was complying with and was ready and willing to comply with in the future, all the conditions, obligations and terms of said contract, which were by him to be observed, complied with and performed, elected to treat said wrongful refusal of the defendant to perform its obligations under said contract as a repudiation and renunciation of the entire contract, which relieved the plaintiff from his obligations thereunder. The plaintiff further says that he is no longer an insurable risk and cannot procure another policy to take the place of the contract so repudiated by the defendant, and, further, that his total and permanent disability as defined within the provisions of the contract will continue for the rest of his life.

"That on or about the date of said wrongful breach of the contract by the defendant the plaintiff had an expectancy of life, in accordance with the American Table of Mortality, of thirty-six years, and that as of said date of the defendant's breach the defendant owed to the plaintiff the sum of $15,900 damages for breach of the total and permanent disability provisions, in accordance with the following schedule:

"Item 1. 39 months disability from July 11, 1933, at $20 per month, .................. $780.00
"Item 2. For the next 60 consecutive months after the first period, at $30 per month, ... $1,800.00
"Item 3. 333 months of disability next after the previous periods, at $40 per month, ...$13,300.00

$15,900.00"

The defendant's demurrer is as follows:

"The facts alleged do not support the plaintiff's conclusion that upon the defendant's assertion that, the plaintiff being no longer totally and permanently disabled within the terms of the policy, it would not continue to make the monthly payments and waive the semi-annual premiums, thereupon the plaintiff acquired a right to recover from the defendant forthwith the aggregate of all benefits which would be payable to him if he should live out a normal expectancy under the Mortality Table while continuously totally disabled.

"The facts alleged show a right in the plaintiff only to sue for monthly instalments claimed to be already due and for premiums which he claims ought to have been waived, prior to the date of the writ, and a right in equity if seasonably exercised to restrain the defendant from declaring the policy lapsed for non-payment of premiums.

"Wherefore the declaration sets forth a cause of action only for payments under the contract between the date as of which the defendant ceased to continue monthly payments and waiver of premiums, namely, July 11, 1933, and the date of the writ, namely, November 9, 1933, as follows: The payments of $20 each claimed by the plaintiff to be due on August 11, September 11 and October 11, 1933, and waiver of the semi-annual premium of $38 due August 7, 1933, a total of $98, which is a sum beneath the jurisdiction of this court."

The law on this subject has recently been stated in Mobley v. New York Life Insurance Co., 55 S. Ct. 876, 878, 79 L. Ed. ——, May 27, 1935: "Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy." Butler, J. See, too, Daley v. Peoples' Bldg., etc., Ass'n, 178 Mass. 13, 18, 59 N. E. 452, and Indiana Life Endowment Co. v. Reed, 54 Ind. App. 450, 103 N. E. 77. On the other hand, "repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation." Mobley v. New York Life Ins. Co., 55 S. Ct. 876, 878, 79 L. Ed. ——, Butler, J., citing authorities. See, too, Pierce v. Tenn. Coal, Iron, etc., Co., 173 U. S. 1, 19 S. Ct. 335, 43 L. Ed. 591; Lovell v. St. Louis Mutual Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 423; Parker v. Russell, 133 Mass. 74.

As we construe the declaration, it alleges a complete and unqualified denial by the defendant of all liability on the policy. It states that the defendant not only refused to pay benefits due, but wrongfully lapsed the policy for nonpayment of premiums. An unconditional lapsing of the policy was a complete termination of it and a denial by the defendant of any further liability on it. There is no allegation that the defendant recognizes any further rights of the plaintiff in the policy, or any further liability upon it. The facts alleged are essentially different from those in the Mobley Case where it was held that the evidence did not show repudiation of the policy or a complete denial of liability on it by the company. On the allegations of the declaration we are of opinion that the plaintiff was entitled to maintain the action and, if the lapsing was found to be a complete and unqualified denial by the defendant of any further liability on the policy and was unjustified that the plaintiff would be entitled to recover damages equivalent to the value to him of the contract which was broken. See Day v. Conn. General Life Ins. Co., 45 Conn. 480, 29 Am. Rep. 693; Merrick v. Northwestern Nat. Life Ins. Co., 124 Wis. 221, 102 N. W. 593, 109 Am. St. Rep. 931; Indiana Life Endowment Co. v. Reed, 54 Ind. App. 450, 103 N. E. 77; and O'Neill v. Supreme Council, 70 N. J. Law, 410, 57 A. 463, 1 Ann. Cas. 422 (Pitney, J.), in all of which it was said that on unjustified repudiation of a policy of insurance by the defendant company, the plaintiff might recover the value of the policy at the time when it was declared forfeited.

The doctrine of anticipatory breach which was discussed in argument has no application to the facts stated in the declaration. That doctrine, strictly stated, applies to situations in which the parties have made a bilateral executory contract looking to performance by each in the future and before the time for performance arrived one party notified the other that he will not go on. Roehm v. Horst, 178 U. S.

1, 20 S. Ct. 780, 44 L. Ed. 953, holds that an action against the repudiating party lies immediately, before time for his performance has arrived; and Daniels v. Newton, 114 Mass. 530, 19 Am. Rep. 384, holds the contrary. Here the time for performance by the defendant had arrived and there was both a present breach and a complete repudiation of the entire contract. In Pierce v. Tenn., etc., Co. supra, repudiation by the defendant of an agreement by it to pay the plaintiff, who had been injured, stated monthly payments as long as his disability should continue, coupled with nonpayment of sums due, was held to warrant the assessment of damages equivalent to the value to the plaintiff of the broken contract. In Lovell v. St. Louis Mutual Ins. Co., 111 U. S. 264, 4 S. Ct. 390, 28 L. Ed. 453, where the defendant company went out of business and transferred its assets to a new company, it was held that "the complainant had a right to consider it (the policy) as determined by the act of the company, and to demand what was justly due to him in that exigency. Of this we think there can be no doubt." Bradley, J., 111 U. S. 264, page 274, 4 S. Ct. 390, 395. Here the company's act in lapsing the policy was, on the allegations, a determination of it by the company. In Parker v. Russell, 133 Mass. 74, failure by the defendant to make any payments for about two years on a contract to support the plaintiff during the latter's life was held to warrant a finding that the entire contract was broken and an assessment of damages equivalent to the value of the contract to the plaintiff.

The principle of those decisions applies to the present case. We perceive no sufficient reason why life insurance contracts should stand on any different or exceptional footing. For obvious reasons, the continuance of a recognized contractual obligation by the company may be of importance to the insured (Roehm v. Horst, supra), especially where as in this case the obligation is for the regular payment of stipulated sums. If as is here alleged the insured has become uninsurable, the wrongful repudiation of the policy by the insurance company may be a matter of the utmost gravity. The proposition that, if a contract, made upon an executed consideration to pay an annuity, is broken by the refusal to pay the installments due and is completely repudiated by the promisor, the person entitled to the annuity has no redress except to bring actions for the installments as they become due, does not commend itself to us although several cases cited in Mobley v. N. Y. Ins. Co., 74 F. (2d) 588 (C. C. A. 5), have so held. With respect to war risk insurance cases, also referred to in the Mobley opinion, in those that have come under our notice the issue has generally been whether the insured brought himself within the terms of the policy. In few if any cases did the government repudiate or disavow the contract.

The fact that the plaintiff's right to receive further payments rested on certain conditions to be performed by him does not bar the recovery of damages. They are allowed in many cases of that character. Pierce v. Tenn., etc., Co., 173 U. S. 1, pages 14 to 16, 19 S. Ct. 335, 43 L. Ed. 591. Nor does the fact that the defendant's obligation was only to pay money prevent the assessment of damages for the entire value of the contract including future payments, as the cases above referred to illustrate. Commercial paper stands on a special footing as was said in Roehm v. Horst, 178 U. S. 1 at page 17, 20 S. Ct. 780, 44 L. Ed. 953.

The declaration asserts a claim based on the plaintiff's expectation of life according to the standard mortality tables. If such tables are admissible when the life in question is that of a person totally disabled and uninsurable, which is a question to be decided in the first instance by the trial judge and on which we express no opinion, plainly they are only evidence to be considered in connection with all the other evidence in estimating the value to the plaintiff of the contract which was broken.

The judgment of the District Court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs of appeal.