**In re NEW YORK, N. H. & H. R. CO.**

**ANNETT v. NEW YORK, N. H. & H. R. CO.**

**No. 28.**

Circuit Court of Appeals, Second Circuit.

Nov. 1, 1937.

Curtis K. Thompson, John H. Weir, and Herbert S. MacDonald, all of New Haven, Conn., for claimant.

Frederick H. Wiggin, Stewart H. Jones, and John Q. Tilson, Jr., all of New Haven, Conn., for appellee Bankers Trust Co.

Edward R. Brumley, of New York City, for trustees of the debtor.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The claimant, Annett, while a passenger on the debtor railroad during the year 1913, suffered injuries for which the debtor recognized liability. On January 1, 1914 it made an agreement with her to pay her $10,000 cash at once, and $700 a month as long as she should live. This agreement it continued to perform until the month of November 1935, when it defaulted. It had filed a petition for reorganization under section 77 of the Bankruptcy Act, as amended (11 U.S.C.A. § 205 and note) in October, 1935, and its trustees repudiated the agreement. They now acknowledge liability for a claim, though without priority; but they say that it should be liquidated at the present value of the future payments, calculated upon an actuarial table for disabled persons. The claimant on the other hand demands so much as will buy her from a sound underwriter an annuity of $700 a month for the rest of her life; and that this shall be a prior claim by virtue of that part of subdivision (b) of section 77, as amended (11 U.S.C.A. § 205 (b), which reads as follows: "for all purposes of this section unsecured claims, which would have been entitled to priority if a receiver in equity * * * had been appointed by a Federal court on the day of the approval of the petition, shall be entitled to such priority." As an alternative ground of priority she rests upon a passage in a mortgage executed by the debtor on December 9, 1920, which recited that it was for the security, not only of the present and future holders of the bonds issued thereunder, but, "of all bonds, debentures, notes and other evidences of indebtedness heretofore issued and outstanding at the execution thereof, of which the Railroad Company is the maker, or which it has assumed through merger or consolidation with the original and principal obligor." The judge held that the claim was not entitled to priority, but that it should be liquidated at the purchase price of an annuity of $700 a month for the remainder of the claimant's life.

As to priority, it is antecedently unlikely that the language just quoted from subdivision (b) of section 77 gives any to a passenger's claim, in the face of subdivision (n), § 77, as amended (11 U.S.C.A. § 205 (n), which limits priority to the claims of injured workmen, or of their dependents when they have been killed; but, however that may be, there was no practice in equity which can bring the case within subdivision (b). The doctrine that debts incurred shortly before insolvency are prior claims upon income first got recognition from the Supreme Court in Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339. The reason then given was that the lienors are to be presumed to have consented that current operating expenses should be borne by current revenues; and, if so, it ought to be enough to show that the debt in question is commonly classed as an operating expense. Seizing upon this, the claimant here argues that since the Interstate Commerce Commission has classed compensation for injuries among current operating expenses, she has a priority at least upon current operating revenue; and so far as this will not suffice, upon the corpus of the road, provided she can show that current operating revenues have been deplet-

ed to pay interest on the bonds. But to say that the lienors are to be presumed to have consented to the priority is not to give any reason; and in Miltenberger v. Logansport Railway Co., 106 U.S. 286, 311, 312, 1 S.Ct. 140, 27 L.Ed. 117, the priority was rested upon the necessity for the continued operation of the road. In times of stringency, persons dealing with it may be unwilling to take its credit if they suppose that the whole property can be taken from them by the lienors; and if so, the road will not be able to secure the labor and supplies necessary for its continued operation, a benefit to all concerned, including the lienors. Following this, in Burnham v. Bowen, 111 U.S. 776, 783, 4 S.Ct. 675, 679, 28 L.Ed. 596, Chief Justice Waite concluded by saying that only those expenses should have priority which were "for the benefit of mortgage creditors," language which has been accepted several times since. St. Louis, etc., Ry. Co. v. Cleveland, etc., Ry. Co., 125 U.S. 658, 673, 674, 8 S.Ct. 1011, 31 L.Ed. 832; Virginia & Alabama Coal Co. v. Central R. R. & Banking Co., 170 U.S. 355, 367, 18 S.Ct. 657, 42 L.Ed. 1068; Southern Ry. Co. v. Carnegie Steel Co., 176 U.S. 257, 285, 286, 20 S.Ct. 347, 44 L.Ed. 458; Gregg v. Metropolitan Trust Co., 197 U.S. 183, 187, 25 S.Ct. 415, 49 L.Ed. 717. It was upon the basis of this gloss upon the original text that, when the case arose of a claim for injuries, the Eighth Circuit denied priority (St. Louis Trust Co. v. Riley [C.C.A.] 70 F. 32), a decision which has been followed in three other circuits and was unquestionably the law when section 77 was passed. Farmers' Loan & Trust Co. v. Northern Pac. R. R. Co. (C.C.A.9) 79 F. 227; Hampton v. Norfolk & W. R. R. Co. (C.C.A.4) 127 F. 662; Pennsylvania Steel Co. v. N. Y. City Ry. Co. (C.C.A.2) 216 F. 458. In Bowen v. Hockley (C.C.A.) 71 F. (2d) 781, 94 A.L.R. 856, the Fourth Circuit did indeed establish an exception in the case of compensation awards to employees, though even then only to the extent of charging upon income such installments as fell due during the receivership. The reasoning on which this rested was that, as the employee's labor was necessary to the operation of the road, his compensation, like his wages, was for the benefit of the lienor. It may be doubted whether compensation stands like wages in the sense that doubts as to its priority in insolvency would even remotely affect the willingness of the men to continue to work; but with that we need not concern ourselves. It would in any case be utterly fantastic to suppose that any passenger would be deterred from traveling on a road because a judgment for any injuries he might suffer would not be a prior claim. Yet only on some such theory can it be supposed that the case falls within subdivision (b). Perhaps subdivision (n) should have extended the protection, but it did not. McCullough v. Union Traction Co., 206 Ind. 585, 186 N.E. 300, does indeed go the whole way, but it stands alone against the uniform federal authorities. In Re Chicago, etc., Railway Co. (C.C.A.7) 90 F.(2d) 312, concerned the second part of subdivision (n), and has nothing to do with the situation here. If the claimant is to have any priority, it must therefore be because of the mortgage.

The words were taken, almost without change, from a Massachusetts statute of 1915 (Mass.Acts of 1915, ch. 303, § 1) which in turn came from an earlier act of 1854 (Mass.Acts 1854, ch. 286, § 3), where the form was "all other pre-existing debts and liabilities." The Supreme Court of Massachusetts has not construed the phrase, and there are no contemporaneous sources to which we can turn. It must be owned that it is a little hard to circumscribe the generality of the original words, and perhaps it was the purpose of the General Court in 1854 to secure every sort of liability, strange as such a policy now appears to us. At any rate we should have no right to assume that when the section was recast, it was without change of purpose, especially as the new words smack strongly of exactly that. The claimant's contract may perhaps without too great strain be thought an "evidence of indebtedness"—though it would be an unusual way to describe it—but to speak of it as "issued and outstanding" does great violence to the words. The phrase as a whole most appropriately covers a series of obligations which pass from hand to hand and make up a mass of fungibles; a corporate "issue," like the other kinds of indebtedness which the section mentions. This we think was all that was intended; it seems extremely unlikely that every debt of every kind was to be put on a parity with each new issue of bonds. Individual creditors have it always in their power to collect their debts, and if they choose to let them run along, there is no apparent reason to in-

tervene in their behalf. Nor are we impressed with the supposed injustice done the claimant at bar by denying her priority. When she was hurt nearly 25 years ago, she had a good and immediately collectible claim against a solvent debtor; no doubt it was wise not to press for a single payment when she could get so favorable a substitute. But that choice involved the acceptance of the road's credit extending over an indefinite number of years; and she has no claim upon our sympathy, because she is forced to walk pari passu in the company which she then accepted. We think that the judge was therefore right to deny her priority.

The trustees' appeal raises a much more troublesome question: the proper liquidation of such a contract. The road's promise was to make a series of payments so long as the claimant should live. So far as it was certain that any one of these would become due, its present value offers no difficulty, but none of them is certain in event; to each attaches a wholly incalculable factor. At times we meet such situations by mortality tables, assuming that the person involved will live as long as, and no longer than, the average of his class. This method gives surprisingly accurate forecasts for the insurer who deals with great numbers, but when applied to the individual it is far from doing so. He can do only one of two things: invest the fund at the supposed rate and withdraw installments as they fall due; or go into the market and buy an annuity. The first will not be the equivalent of what he originally had. If he dies before his expectancy, his estate will receive the rump which remains; if he lives longer than his expectancy, he will have an indefinite number of lean years. His very purpose in taking an annuity was to avoid that predicament if he should live too long, and not to leave anything to his estate, no matter when he dies. It is therefore a fiction to say that the actuarial sum is an equivalent as to him, though it is correct that it is so as to an underwriter who is in the business. Expectancies are not prophecies, but averages. On the other hand, if he seeks to buy an annuity, the commuted value of the payments will not be enough. Therefore the only sum which will restore him, is that which will buy the same annuity from underwriters who alone sell such goods. It is of no importance that the price includes their profit, and that they do not

recognize any special classes of risks; the promisee is entitled to restoration, whatever it may cost.

This has been the result in the only two cases in which courts have consciously dealt with the point. Attorney General v. North America Life Insurance Co., 82 N.Y. 172, 187–192; Strakosch v. Connecticut Trust & Safe Deposit Co., 96 Conn. 471, 114 A. 660. It is true that in a number of decisions judgment has been given only for the present value of the series of payments, commuted by the annuitant's expectancy. But in all of these the obligor was trying to escape any liability whatever, the obligee did not appeal, and the court assumed without debate, and apparently without being made aware of the issue, that the commuted value was the proper measure of damages. Pierce v. Tennessee C. I. & R. R. Co., 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591; Schell v. Plumb, 55 N.Y. 592; Paro v. St. Martin, 180 Mass. 29, 61 N.E. 268; Freeman v. Fogg, 82 Me. 408, 19 A. 907; Morrison v. McAtee, 23 Or. 530, 32 P. 400; Aetna L. I. Co. v. Phifer, 160 Ark. 98, 254 S.W. 335; Title & Trust Co. v. United States F. & G. Co., 138 Or. 467, 1 P.(2d) 1100, 7 P.(2d) 805; Pollack v. Pollack (Tex.Com.App.) 39 S. W.(2d) 853. It is also true that in estimating the damages in death cases it is customary to tell the jury that they may consider the deceased's expectancy. But the calculation in such actions is subject to so much other uncertainty, that it would be impossible to tell them more. The dependents are not obligees of a promise to pay a series of fixed payments; the earning power of the deceased is wholly indeterminate. True, a jury might in fact proceed by first settling upon the deceased's average contribution while he lived, and then commuting the series by a mortality table; but that would be mere accident and not in obedience to any rule of law. These cases give no warrant for overruling the only deliberate decisions on the precise issue; especially when the result would be to substitute a fictitious, for a real, measure of restitution.

Order affirmed.

SWAN, Circuit Judge (dissenting in part).

I agree that the claim in suit is not entitled to a priority classification; but I am unable to agree that the proper way to liquidate the claim is to award the

432

claimant the cost of purchasing an annuity from an insurance company. It is conceded that in general the measure of damages for repudiation of a contract to pay money in the future is the present value of such future payment or series of payments. If we knew the exact number of future payments which the railroad company would have to make to perform its promise to pay $700 per month during the promisee's life, the present value of all such payments would concededly be the legal measure of damages now recoverable from the promisor. The promisee is unable to prove the exact number of installments which will fall due during her life. Instead of saying she must approximate such proof as best she can by mortality tables, the majority hold that she may prove something different; namely, what an insurance company would charge for contracting to pay her an annuity for the rest of her life. This compels the railroad to do for her more than it ever promised to do; it awards her the measure of damages to which she would have been entitled if the railroad had repudiated a promise to purchase for her an annuity from an insurance company. But that was not the promise it made in settlement of her tort claim. A promise to make future payments of money is not the same as a promise to procure them to be made by another. No one would suggest that repudiation of a promise to pay $10,000 in ten annual installments would entitle the promisee to recover what an insurance company might charge for agreeing to make similar payments. If the payments be conditioned upon the promisee's life, I cannot believe that this should increase the promisor's duties or the promisee's rights. Upon breach of a contract by anticipatory repudiation, the promisee may treat the repudiation as a complete breach and sue at once, or he may wait to sue for each installment as it comes due under the contract. Am.L.Inst.Contracts, § 318 (d). In a suit based on the repudiation as a complete breach he has the burden of proving what his damages will be. If payment is conditioned on his life, he should have to prove as best he may that he will be alive when the future installment will fall due. True, mortality tables do not supply exact prophecies, but they are accepted as proof of probabilities. The plaintiff promisee must prove the probability of the happening of the condition which entitles him to damages. If he cannot make that proof with absolute accuracy, he may recover less than his actual damages turn out to be. This is a risk inherent in litigation whenever the plaintiff has the burden of proving a future event incapable of exact prediction. There is nothing peculiar to an annuity which makes it unjust to put upon the claimant the risk of outliving her probable span of life and finding that the damages she was able to prove were not as great as those she actually sustained. Indeed, aside from the promisor's bankruptcy, there is no necessity for an annuitant to act upon the promisor's repudiation; as already stated, he may wait and sue for each installment as it falls due, thus avoiding the risk of making too small a recovery. Such option is illusory when the promisor is bankrupt, but I do not understand that the rule of damages which the court is laying down is applicable only to insolvent railroads; and certainly it would be strange if the insolvency of a promisor should increase the measure of damages for his breach of a contract.

From the standpoint of the promisor the rule adopted by the majority seems to me decidedly unfair. In agreeing that it would itself make the annuity payments instead of agreeing to purchase an annuity for the claimant, the railroad made a settlement which reserved to itself the benefit that would accrue if the plaintiff should die sooner than the expectancy forecast for her by mortality tables. Because of her serious injuries it no doubt believed that she would do so. Under the rule adopted by the majority not only is that possibility eliminated but it is assumed that she will live longer than the average member of the community of the same present age, because the Combined Annuity Table, upon which the rates are prepared, is based upon experience that the probabilities of death applicable to annuitants are lower than among general insurance policyholders or among the general population as a whole. Moreover, the rates are fixed without regard to the health of an annuitant and no reduction is made if the applicant has a disability. Again, the rates are "loaded" to assure the company a profit. An actuary testified that the value of an annuity of $700 per month for a person of the claimant's age at the date of the breach of contract was $152,782, calculated on the Combined Annuity Table at a rate of 3 per cent. return, or $135,101 at a 4 per cent. return; yet the cost of an annuity purchased from

a standard insurance company would be $161,577. The railroad never agreed to pay an insurer to provide an annuity for the claimant. To award her the cost of purchasing an annuity seems to me to saddle the railroad with a promise it never made and to give her an advantage she never bargained for. She gets a sum of money which she need not apply to the purchase of an annuity and which in all probability will not be entirely used up during her life by depleting the fund and its earnings at the rate of $700 per month. With so little authority in favor of the rule adopted by the majority of the court and much which tacitly assumes that commuted value of future payments is the proper measure, in my opinion we are free to decide the question on principle. For the reasons given I think commuted value accords with the general principles of damages for breach of contract.