806 A.2d 820 (2002)
354 N.J. Super. 247
Andrea E. CIPALA, Plaintiff-Appellant/Cross-Respondent,
v.
LINCOLN TECHNICAL INSTITUTE,[1] Defendant-Respondent/Cross-Appellant,
The Cittone Institute and Stonington Partners,[2] Defendants.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2002.
Decided September 26, 2002.
*822 Mandy R. Steele, East Brunswick, argued the cause for appellant/cross-respondent.
Steven Backfisch, Westfield, argued the cause for respondent/cross-appellant (Lindabury, McCormick & Estabrook, attorneys; Mr. Backfisch and Anne B. Gasior, on the brief).
Before Judges STERN, COBURN and COLLESTER.
The opinion of the court was delivered by
COBURN, J.A.D.
Plaintiff, Andrea E. Cipala, sued defendant Lincoln Technical Institute ("Lincoln") in the Law Division for breach of her employment contract and for violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("LAD"). The judge dismissed the LAD action, and the jury found Lincoln liable for breach of contract in that it wrongly failed to include plaintiff in its disability insurance plan, thereby denying her benefits when she became disabled.
After the liability determination, the issue of remedies was submitted to the judge on plaintiff's motion for summary judgment. Lincoln conceded that under the plan plaintiff was entitled to a monthly income of $1,869.08 until age sixty-five so long as she remained disabled. Plaintiff asked for the accumulated benefits from the onset of her disability, a lump sum representing the present value of the monetary benefits she could receive up to age sixty-five, and counsel fees. The parties agreed on the amount of past benefits, but Lincoln contended that plaintiff was only entitled to a judgment of specific performance of the obligation to pay future benefits. The judge rejected plaintiff's requests for counsel fees and a lump sum representing the present value of future benefits, but ordered Lincoln to fund a trust to be administered by an "institutional trustee."
Plaintiff appeals, complaining of the dismissal of her LAD claim and the denial of counsel fees; but her primary contention is that the judge erred in denying her request for lump sum damages. Lincoln cross-appeals, contending only that the judge erred in requiring it to fund the contingent future benefits by creation of a trust.
The main question we must resolve is the nature of the judicial remedies available to an employee for anticipatory breach of an employment contract that required inclusion of the employee in the *823 employer's disability-income insurance plan. We will discuss the issues in this order: plaintiff's lump sum damage claim; denial of counsel fees; dismissal of the LAD claim; and the court's power to create a trust in these circumstances. Since we agree with Lincoln and disagree with plaintiff, a remand will be required for modification of the judgment.

I
The material facts on plaintiff's damage claim are undisputed. No evidence or stipulation was submitted describing the nature of plaintiff's disability or whether it would permanently prevent her from working. Nonetheless, at least for purposes of this appeal, Lincoln concedes that it breached the employment agreement and that plaintiff was entitled to disability payments of $1,869.08 in the past and to a continuation of those payments until she becomes sixty-five, dies, or is no longer disabled. Funding of the trust would require four annual payments of $68,500, the first one being due on October 1, 2001, for a total of $274,000. Those payments include annual commissions of $2,000, payable to the institutional trustee, Commerce Bank, National Association. After four years, Lincoln would be required to pay the trustee $2,000 per year until the trust terminated, at which time the balance of the trust would be returned to Lincoln.

II
Plaintiff's claim for the present value of the promised disability payments to age sixty-five is based on the concept of anticipatory breach of contract. A breach of that nature occurs when a party renounces or repudiates a contract by unequivocally indicating that it will not perform when performance is due. It gives rise to a claim for specific performance, or for damages for total breach; i.e., for damages based on the injured party's remaining rights to performance under the contract. Stopford v. Boonton Molding Co., 56 N.J. 169, 188, 265 A.2d 657 (1970). In Stopford, an employee's vested contractual right to a lifetime pension was breached when defendant announced that it was terminating the pension plan. Id. at 181, 265 A.2d 657. The Court explained plaintiff's remedies in this manner:
When defendant-company terminated the pension plan and advised plaintiff that he would receive no further retirement benefits, its action amounted to a renunciationa total anticipatory breach of its agreement to pay plaintiff $296.17 monthly during his lifetime. When that occurred, plaintiff had a choice of remedies. He could elect to sue for the accumulated unpaid benefits from October 1, 1966 to the date of trial and for a judgment of specific performance of the obligation to pay the benefits until his death. Or he could treat the breach as total and seek recovery of one lump sum representing the present value of the monetary benefits he could have received over his expectancy.
[Id. at 188, 265 A.2d 657 (citations omitted).]
Accordingly, Lincoln's denial of plaintiff's opportunity to successfully apply for benefits when she became disabled and while the disability continued was an anticipatory breach of the employment contract. However, application of that doctrine in this context to allow a lump sum payment, as distinguished from specific performance, would be inconsistent with the fundamental aim of remedies for breach of contract, which is to place the injured party in as good a position as would have existed if the contract had been performed as promised. Donovan v. Bachstadt, 91 N.J. 434, 444, 453 A.2d 160 (1982). Plaintiff's claim that she is entitled *824 to a lump sum equal to the present value of the disability payments to age sixty-five is inconsistent with Donovan because there was no evidence that her disability would prevent her from ever returning to work. Had Lincoln not breached the agreement, plaintiff's return to good health would have immediately ended her disability payments under the insurance plan. Thus, on this record, the relief sought would place plaintiff in a better financial position than she would have been in had Lincoln met its obligation. Under Donovan, plaintiff is not entitled to damages that improve her position over what it would have been without the breach.
Moreover, the authorities cited by Stopford clearly support the judge's rejection of plaintiff's present value damage claim. Of particular significance is the Court's citation of Pierce v. Tennessee Coal, Iron & R.R. Co., 173 U.S. 1, 19 S.Ct. 335, 43 L.Ed. 591 (1899), which it described as "a case analogous to the present one." Stopford, 56 N.J. at 189, 265 A.2d 657.
In Pierce, the defendant-employer committed an anticipatory breach of its promise to pay wages to its employee, the plaintiff, "so long as his disability to do full work continued...." 173 U.S. at 9, 19 S.Ct. at 338, 43 L.Ed. at 595. There the plaintiff proved that he "was permanently disabled." Id. at 15, 19 S.Ct. at 341, 43 L.Ed. at 597. Writing for a unanimous court, Justice Gray had this to say:

If these facts were proved ..., the case would stand thus: The defendant committed an absolute breach of the contract, at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see if the defendant would change its decision, and take him back into its service; or to resort to successive actions for damages from time to time or to leave the whole of his damages to be recovered by his personal representative after his death. But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract; and to recover all that he would have received in the future, as well as in the past, if the contract had been kept. In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of that contract.
[Id. at 16, 19 S.Ct. at 341, 43 L.Ed. at 597 (emphasis added).]
Apart from the breach, we believe the critical fact in Pierce was that plaintiff proved his permanent inability to work.
Stopford noted that "[in] employment contract actions ..., unlike breach of lifetime pension agreement cases, the employee's recovery is usually subject to mitigation depending upon the likelihood of receipt of compensation from other employment during the unexpired term of the breached contract." 56 N.J. at 190, 265 A.2d 657 (citations omitted). After then stating that such considerations "have no particular pertinency in retirement or pension cases[,]" ibid., the Court cited with approval the comments on this subject appearing in Minnesota Amusement Co. v. Larkin, 299 F.2d 142, 153 (8th Cir.1962). Stopford, 56 N.J. at 190-91, 265 A.2d 657. After discussing the subject of mitigation in employment contract actions, the federal court said: "A like possibility of reduction in the amount of damages may be applicable to disability contracts where future disability has not been ascertained." Minnesota Amusement Co., 299 F.2d at 153. Implicit in that remark is the conclusion that when an employee's future disability has been proven to be permanent, defendant's anticipatory *825 breach entitles the employee to the present value of the entire contract; a result which accords with the United States Supreme Court's decision in Pierce.
On the other hand, when, as here, the employee has failed to prove permanent disability, and the employer's obligation is to pay only so long as the employee remains disabled, the employee "`must await the due dates.'" Minnesota Amusement Co., 299 F.2d at 153 (quoting Rishmiller v. Prudential Ins. Co., 192 Minn. 348, 256 N.W. 187, 189 (1934)); see also, Finley v. St. John's Mercy Med. Ctr., 958 S.W.2d 593 (Mo.App.1998), where the court summarized the applicable rule in this way:
This case involves a contract which contains a continuing duty to pay disability benefits. Defendants breach that duty and plaintiff suffers new damages each month that plaintiff's disability continue and she is not paid the monthly benefits pursuant to the terms of the contract. Her cause of action for benefits in any particular month does not accrue until these conditions have been met. Therefore, at the time summary judgment was entered, the trial judge could not award future disability payments because plaintiff could not prospectively establish her entitlement to such payments. Future damages could not be determined because the length of time plaintiff would remain disabled and entitled to disability benefits could not be known in advance.

[Id. at 595-96 (emphasis added).]
Finley concluded by saying that when permanent disability had not been established "the only practical method by which damages could be recovered was by successive actions for damages after they accrued." Id. at 596. However, under Stopford, a plaintiff would also appear to be entitled to a judgment for specific performance of the contract, directing that benefits be provided so long as the disability continues. 56 N.J. at 188, 265 A.2d 657.
In accordance with the cited authorities, we hold that the anticipatory breach of a disability contract will support a claim for the present value of the future payments called for only when the employee has proven a permanent inability to work. Since plaintiff's proofs failed in that regard, we affirm the order denying her lump sum claim.
Plaintiff's demand for counsel fees must be denied. She bases her demand on R. 4:42-9(a)(6), which provides for counsel fees "[i]n an action upon a liability or indemnity policy [of insurance], in favor of a successful claimant." Here, even the underlying policy of insurance is neither for liability nor indemnity. Therefore, even if we accepted plaintiff's argument that Lincoln should be deemed to stand in the shoes of its insurance company, there would be no liability for such fees. See, e.g., Selective Ins. Co. v. Hojnoski, 317 N.J.Super. 331, 338, 722 A.2d 118 (App. Div.1998); Karl v. N.Y. Life Ins. Co., 154 N.J.Super. 182, 187-88, 381 A.2d 62 (App. Div.1977).
The LAD claim dismissal cannot be reviewed because it was not confirmed by an order, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199, 773 A.2d 706 (2001), and because plaintiff has not provided us with a transcript of the trial or proceeding in which the ruling was supposedly made, R. 2:5-1.

III
Lincoln opposes the judge's order directing creation and funding of the trust as inconsistent with the remedies noted in Stopford, namely, present value damages or specific performance. 56 N.J. at 188, 265 A.2d 657. Other than citing Stopford, *826 Lincoln relies on the absence of any authority for the order.
The judge's concern was that without the mechanism of a trust plaintiff's position might be less secure than it would have been if she had the benefit of the insurance policy. The judge reasoned that since plaintiff was entitled to be placed in as good a position as would have existed if the contract had been performed, her potential right to disability payments to age sixty-five should be secured. Although that view might have merit in some circumstances, one difficulty we have in accepting it here is that there was no proof that Lincoln's economic condition was poorer than that of its insurance company. Furthermore, our own research has not revealed any case or legislative act specifically authorizing creation of a trust in these circumstances. Compare N.J.S.A. 2A:34-23, which provides for the court's use of "trusts or other security devices" to assure the parties' observation of orders for periodic payment of maintenance and support in family matters, with the absence of such authority in the statutes controlling judgments in civil actions generally, N.J.S.A. 2A:16-1 to -62.
The trust imposed by the judge required Lincoln to deposit over $250,000 with the institutional trustee for so long as plaintiff remained disabled. Apart from the unnecessary detriment to this defendant, the result is to place the plaintiff in a better position than she would have been as a beneficiary of the insurance policy. For in that instance, no segregated fund would have existed and she would have had to face the risk of the insurance company becoming insolvent. Thus, the judge's order cannot stand since it is inconsistent with Donovan and goes beyond the remedies provided for in Stopford.
Therefore, we reverse the order directing creation of the trust, and remand for entry of a judgment directing specific performance of the contract.
Affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.
NOTES
[1] The record suggests that the correct name of this party is Lincoln Technical Institute, Inc. On remand, the judgment should be corrected accordingly.
[2] Although the final judgment directs relief against these parties, neither was plaintiff's employer, and plaintiff does not argue for relief against them. On remand, the judgment should be corrected accordingly. In our discussion, we will refer only to the action against respondent.