843 A.2d 1069

ANDREA E. CIPALA, PLAINTIFF–APPELLANT, v. LINCOLN
TECHNICAL INSTITUTE, DEFENDANT–RESPONDENT, AND
THE CITTONE INSTITUTE AND STONINGTON PARTNERS,
DEFENDANTS.

Argued October 20, 2003—Decided March 16, 2004.

*Mandy R. Steele* argued the cause for appellant.

*Steven Backfisch,* Westfield, argued the cause for respondent (*Lindabury, McCormick & Estabrook,* attorneys).

The opinion of the Court was delivered by

WALLACE, Justice.

In this appeal, we consider whether the creation of a trust fund is an appropriate remedy for an employee when there has been a wrongful breach of a disability contract by her employer. In a bifurcated trial, after the trial court dismissed plaintiff's claim under the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -49, the jury found that defendant had breached the contract. The trial court denied plaintiff's request for a lump sum payment, awarded her the amount of the past due monthly payments up to the time of judgment, and ordered defendant to pay plaintiff $1,869.08 each month until plaintiff was no longer disabled, reached the age of sixty-five, or died. Subsequently, the court ordered defendant to fund a trust in the amount of $250,000 to ensure the monthly payments would be made over the required period and denied plaintiff's request for attorney's fees. On appeal, the Appellate Division affirmed in part and reversed the imposition of the trust fund. *Cipala v. Lincoln Technical Inst.,* 354 *N.J.Super.* 247, 806 *A.*2d 820 (2002). We granted certification, 175 *N.J.* 548, 816 *A.*2d 1049 (2003), and now affirm in part, reverse in part, and reinstate the judgment of the Law Division. We hold that the trial court properly denied a lump sum recovery, and that under the circumstances here, the imposition of a trust device was an appropriate remedy.

## I.

The facts are not disputed. In 1996, plaintiff Andrea E. Cipala began working as an Admission Representative for the Cittone Institute, which is owned by defendant Lincoln Technical Institute. As part of her benefits package, plaintiff was informed that she would receive long-term disability insurance and was given a disability plan booklet.

On July 20, 1999, plaintiff injured her left knee on the job. She was forced to leave work on disability and in August 1999 underwent knee surgery. Thereafter, plaintiff sought long-term disability benefits from defendant under its long-term disability plan. Defendant informed her that she was not covered by the policy.

Plaintiff filed an action against defendant alleging breach of her employment contract and violation of the LAD. A jury trial followed, limited to the question of liability. After presentation of the evidence, the trial court dismissed the LAD count. The jury then found defendant breached its contract with plaintiff by failing to provide long-term disability benefits pursuant to defendant's insurance plan.

Plaintiff filed a summary judgment motion seeking compensation in the amount of her accumulated benefits from the onset of her disability, and an order requiring defendant to purchase an annuity for her to ensure payment for the full entitlement period under the plan. Alternatively, plaintiff requested a lump sum payment equal to the present value of the monetary benefits she could receive until the age of sixty-five. Plaintiff also requested counsel fees.

Defendant conceded that the disability benefits plan entitled plaintiff to a monthly income of $1,869.08 until age sixty-five, so long as she survived and remained disabled. Defendant also stipulated to the amount of past due benefits. However, defendant objected to the lump sum payment for future benefits and the purchase of an annuity because plaintiff might overcome her disability or die prematurely. Defendant argued that plaintiff was

entitled only to a judgment for specific performance of the obligation to pay future benefits. Defendant further objected to the award of counsel fees because plaintiff failed to establish any statutory basis, court rule, or legal precedent permitting such an award in a breach of contract action.

The trial court denied plaintiff's requests for an annuity or lump sum damages of future benefits and counsel fees, but ordered defendant to fund a trust for payment of future benefits. A later order memorialized the judgment and outlined the details for funding the trust. Defendant was required to make four equal annual payments to the trust and the parties were required to agree on the terms of the trust document. Any funds remaining in the trust upon termination would revert to defendant. Also, the order expressly provided that defendant was to "stand in the shoes of the insurance company that would have insured plaintiff and maintain its respective rights and obligations."

Plaintiff appealed the denial of lump sum damages, the dismissal of her LAD claim, and the denial of counsel fees. Defendant cross-appealed, challenging the requirement to fund a trust for contingent future benefits.

The Appellate Division affirmed the judgment for specific performance of the contract and relying on *Stopford v. Boonton Molding Co.*, 56 *N.J.* 169, 265 *A.*2d 657 (1970), rejected plaintiff's present value damage claims. *Cipala, supra,* 354 *N.J.Super.* at 251, 806 *A.*2d 820. The panel also denied plaintiff's demand for counsel fees under *Rule* 4:42–9(a)(6), because the action was not based upon a liability or indemnity policy. *Id.* at 253–54, 806 *A.*2d 820. Further, the panel noted its inability to review the LAD claim because the dismissal of the claim was not confirmed by an order and plaintiff failed to provide a transcript of the ruling. *Id.* at 255, 806 *A.*2d 820. In the cross-appeal, the panel concluded that the trust device went beyond the remedies provided for in *Stopford* and reversed the order directing the creation of a trust. *Id.* at 255–56, 806 *A.*2d 820.

## II.

We first address whether plaintiff is entitled to receive a lump sum payment equal to the amount she would acquire if she were to continue to collect disability payments until the age of sixty-five.[1] Plaintiff urges that *Stopford* supports her contention that she is entitled to a lump sum payment because damages are assessed as a breach of the total contract. Defendant counters that *Stopford* is distinguishable and not germane to this case. Additionally, defendant argues that out-of-state cases have held consistently that an employee cannot receive a present lump sum recovery for future disability payments.

As noted, the trial court denied plaintiff's request for a lump sum benefit and the Appellate Division affirmed. The Appellate panel carefully analyzed *Stopford* and concluded that "the authorities cited by *Stopford* clearly support the judge's rejection of plaintiff's present value damage claim." *Cipala supra,* 354 *N.J.Super.* at 252, 806 *A.*2d 820. In *Stopford,* an employee sued his employer for damages resulting from the anticipatory breach of a contract providing for a lifetime pension. 56 *N.J.* at 181, 265 *A.*2d 657. The contract provided that the company would pay the employee $296.17 monthly during his lifetime. *Id.* at 179, 265 *A.*2d 657. The company terminated the pension plan and advised the employee that he would not receive further retirement benefits. *Id.* at 180, 265 *A.*2d 657. The Court found that this amounted to a renunciation or a total anticipatory breach of the agreement. *Id.* at 188, 265 *A.*2d 657. Concluding that the plaintiff was entitled to a lump sum payment, the Court explained:

> When [the breach] occurred, plaintiff had a choice of remedies. He could elect to sue for the accumulated unpaid benefits from October 1, 1966 to the date of trial and for a judgment of specific performance of the obligation to pay the benefits until his death. Or he could treat the breach as total and seek recovery of one lump sum representing the present value of the monetary benefits he could have received over his expectancy.

---

[1] Plaintiff does not appeal or challenge the Law Division's rejection of her request for an annuity.

*[Ibid.]*

One of the primary authorities relied on in *Stopford* was *Pierce v. Tennessee Coal, Iron & R.R. Co.*, 173 *U.S.* 1, 19 *S.Ct.* 335, 43 *L.Ed.* 591 (1899). In *Pierce,* the plaintiff sought recovery because of the defendant's breach of its promise to pay wages to the plaintiff during his disability. 173 *U.S.* at 9, 19 *S.Ct.* at 338, 43 *L. Ed.* at 595. The plaintiff's proof of permanent disability was central to the Court's holding:

> If these facts were proved ... the case would stand thus: The defendant committed an absolute breach of the contract, at a time when the plaintiff was entitled to require performance. The plaintiff was not bound to wait to see if the defendant would change its decision, and take him back into its service; or to resort to successive actions for damages from time to time or to leave the whole of his damages to be recovered by his personal representative after his death. But he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action, once for all, as for a total breach of the entire contract; and *to recover all that he would have received in the future, as well as in the past, if the contract had been kept.* In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract.
> 
> [*Id.* at 15–16, 19 *S.Ct.* at 341, 43 *L.Ed.* at 597 (emphasis added).]

Here, the Appellate Division panel emphasized that the critical factor in *Pierce* was "that plaintiff proved his permanent inability to work," thus fulfilling the condition precedent that was consideration for his receipt of pension benefits. *Cipala, supra,* 354 *N.J.Super.* at 253, 806 *A.*2d 820. The panel concluded that unlike the plaintiff in *Pierce,* Cipala failed to prove permanent disability. *Ibid.* Because defendant is obligated to pay only during plaintiff's disability, the panel reasoned that plaintiff is entitled merely to a judgment for specific performance and may not recover the present value of future payments. *Id.* at 253–54, 806 *A.*2d 820.

We are in complete accord with the view expressed by the Appellate Division regarding that issue. The crucial factor present here and not present in *Stopford,* is that plaintiff's benefits will end if she recovers from her disabilities or dies before reaching age sixty-five. Plaintiff failed to show that her disability is permanent. Thus, she has not fulfilled the condition precedent that would entitle her to a lump sum payment. Because future

damages cannot be determined with reasonable certainty, plaintiff's efforts to obtain a judgment in the amount of future damages must fail. *See, e.g., Finley v. St. John's Mercy Med. Ctr.,* 958 *S.W.*2d 593, 595–96 (Mo.Ct.App.1998) (concluding future damages incalculable when duration of plaintiff's disability unknown).

Plaintiff seeks to overcome that hurdle by arguing that she is permanently disabled. She asserts that on January 24, 2000, the Social Security Administration found her disabled effective July 26, 1999. However, there is no evidence of permanent disability in this record. Consequently, because the issue of plaintiff's total and permanent disability was not litigated and is not in the record, we will not consider her assertions on appeal. *See State v. Harvey,* 151 *N.J.* 117, 201–02, 699 *A.*2d 596 (1997).

We hold that plaintiff is entitled to a judgment for specific performance, but she may not recover lump sum damages for the present value of future disability payments because her disability was not shown to be permanent.

### III.

Our next inquiry is whether the imposition of a trust device to fund future disability payments is an appropriate remedy. Plaintiff urges that because a third-party insurer is not a party to the dispute, a trust arrangement is appropriate to ensure defendant will not default on its obligation to make future payments. Defendant contends that it has no duty to create a fund because it is not required to pay the benefits until each future due date. Further, defendant argues that the establishment of a trust lessens plaintiff's incentive to overcome her disability and return to work.

The trial court reasoned that a trust device was necessary to protect plaintiff from being placed in a less secure position than if she had the benefit of receiving payment from a third-party disability insurer. The trial court concluded that the imposition of a trust would place plaintiff in essentially the same position she

would have been in if the contract had been performed with the disability insurer.

The Appellate Division recognized the merits of the trust device, but found no case law or legislative act authorizing a trust in these circumstances. *Cipala, supra,* 354 *N.J.Super.* at 255, 806 *A.*2d 820. The panel concluded that implementing a trust placed plaintiff in a better position than she would have been in if the contract had not been breached and declined to sanction the trust remedy. *Id.* at 256, 806 *A.*2d 820.

■ The general rule is that "[c]ompensatory damages are designed 'to put the injured party in as good a position as he [or she] would have had if performance had been rendered as promised.'" *Donovan v. Bachstadt,* 91 *N.J.* 434, 444, 453 *A.*2d 160 (1982) (quoting 5 Corbin, *Contracts* § 992 at 5 (1951)). Similarly, in the commercial context the Uniform Commercial Code provides that remedies for the breach of a contract for the sale of goods "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed...." *N.J.S.A.* 12A:1–106(1).

■ In the typical case in which a third-party insurer is involved, the remedy of specific performance is adequate. In that event, the insurer is merely required to pay pursuant to the terms of the insurance policy. When an insurance carrier is not involved, the alternate remedy of acquiring comparable insurance or an annuity is also appropriate. However, when those remedies are not feasible because a substitute insurance policy or annuity is not practical, such as here, the trial court may employ other non-traditional remedies to achieve the goal of placing plaintiff in the position she would have been in if the contract had been performed.

In our view, the trial court struck a fair balance by imposing a trust to be funded over the course of four years. The court was concerned with plaintiff's reasonable expectation that a third-party would pay her regular disability payments so long as she remained

disabled. Because plaintiff could no longer be included under defendant's disability insurance policy, and because defendant could not obtain other similar third-party coverage to satisfy plaintiff's disability claim, the trust fund placed plaintiff in essentially the same position as if she were to receive her future disability payments from a third-party insurer. Absent a trust device, plaintiff would be left to rely on defendant's good faith to make the payments. In light of defendant's prior breach, plaintiff justifiably had little faith that defendant would comply with the obligation to pay the regularly scheduled payments during her disability.

Even if the imposition of the trust places plaintiff in a slightly better position than if a third-party insurer were involved, *i.e.,* the trust device is insulated from insolvency or other financial difficulty, that does not alter our analysis. Viewed from plaintiff's perspective, she will receive no more than the security of knowing that she will be paid the disability benefits she is entitled to receive unless she ceases being disabled, reaches age sixty-five, or dies. Thus, the trust device gives plaintiff no more than she would have received if the contract had not been breached.

To be sure, the trust device imposes an additional burden upon defendant. But, in light of defendant's breach, and the fact that defendant will receive the remaining corpus of the trust in the event plaintiff's disability is removed, we do not find the trust unfair or unduly burdensome. We conclude that under the special circumstances here the imposition of a trust device upon the breaching employer to take the place of the third-party insurer is an appropriate remedy.

## IV.

We turn now to plaintiff's LAD claim. Following plaintiff's presentation of evidence at trial, the trial court dismissed plaintiff's LAD claim. The Appellate Division declined to review this issue because plaintiff failed to submit either a trial transcript or a final order dismissing the claim.

■ *Rule* 2:6–1(a)(1)(C) requires an appellant to include in the appendix "the judgment, order or determination appealed from or sought to be reviewed or enforced, including the jury verdict sheet, if any." Further, our Court Rules require that "if a verbatim record was made of the proceedings before the court . . . from which the appeal is taken, the appellant shall, no later than the time of the filing and service of the notice of appeal, serve a request for preparation of an original and copy of the transcript. . . ." *R.* 2:5–3(a). If no verbatim record of the proceedings exists, "the appellant shall . . . serve on the respondent a statement of the evidence and proceedings prepared from the best available sources, including the appellant's recollection." *R.* 2:5–3(f).

Unfortunately, plaintiff failed to submit either a final order dismissing her LAD claim, *see Do–Wop Corp. v. City of Rahway*, 168 *N.J.* 191, 199, 773 *A.*2d 706 (2001), or a transcript of the trial proceedings. That deficiency prohibits review of her LAD claim. Consequently, we affirm the Appellate Division's refusal to address this issue.

## V.

■ The final issue is whether plaintiff is entitled to counsel fees based on *Rule* 4:42–9(a)(6). That rule authorizes counsel fees in "an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." *Ibid.* In affirming the trial court's denial of counsel fees, the Appellate Division noted that the underlying insurance policy is neither for liability nor indemnity, and therefore there would be no liability for counsel fees even if defendant were the insurance company. *Cipala, supra,* 354 *N.J.Super.* at 254, 806 *A.*2d 820. We agree.

"We have generally adhered to the so-called 'American Rule' meaning that 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 *N.J.* 561, 569, 730 *A.*2d 843 (1999) (quoting *Rendine v. Pantzer,* 141 *N.J.* 292, 322,

661 *A.*2d 1202 (1995)). We find no justification to reach a different result here, therefore we conclude that plaintiff may not recover counsel fees from defendant.

## VI.

The judgment of the Law Division is reinstated. We reverse that portion of the Appellate Division's judgment denying the imposition of a trust.

*For affirmance and reversal*—Chief Justice PORITZ, and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.