# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3285-22

A.S.,

    Plaintiff-Appellant,

v.

D.S.,

    Defendant-Respondent.

_____

          Submitted January 9, 2024 – Decided January 14, 2025

          Before Judges Natali and Walcott-Henderson.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0989-18.

          A.S., appellant pro se.

          Samardin, LLC, attorneys for respondent (Yeugenia K. Samardin, on the brief).

PER CURIAM

Plaintiff A.S.[1] appeals from a May 17, 2023 order dismissing her domestic violence complaint and vacating a temporary restraining order (TRO) against defendant D.S. Because A.S. failed to provide transcripts of the trial proceedings necessary for our review of the matter, we dismiss the appeal without prejudice.

Unless otherwise noted, we detail the following relevant facts from the court's May 17, 2023 oral decision. On November 20, 2017, A.S. filed a domestic violence complaint pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA), alleging predicate acts of assault, N.J.S.A. 2C:12-1, and obtained a TRO which granted her temporary, exclusive possession of the parties' marital home in New Jersey. She subsequently amended her complaint fourteen times; with the last amendment made during the course of the final restraining order (FRO) trial on March 6, 2023.

The initial complaint alleged D.S. assaulted A.S. Specifically, she alleged D.S. "broke [her] ribs three years ago [and] in May 2017, prior to his departure to Russia . . . slapped [her] in the face and spit at her." The complaint also stated

---

[1] We refer to the parties using initials, and their daughters by employing pseudonyms, to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

divorce proceedings had been initiated and A.S. feared for her safety when D.S. returned from Russia.

In the final amended complaint included in the record, dated February 10, 2023, A.S. detailed additional physical and sexual assaults. Specifically, A.S. alleged: (1) on October 12, 2017, D.S. called A.S. and threatened to "break [her] legs and hands" if she filed a domestic violence report; (2) in May of 2017, D.S. "screamed at [A.S.] and her daughters. [D.S.] pushed [A.S.'s] arm and bruised [her] arm"; (3) "on or about June or July 2017: [D.S.] pushed [A.S.] on her arm and told her not to go to the police while they were in Russia. [D.S.] threatened to rip [A.S.] into pieces if she [went] to the police"; (4) in June of 2017, D.S. "forced [A.S.] to have sex with him"; (5) in August of 2017, D.S. "was aggressive and screamed at [A.S.] and her children. [D.S.] said f\*\*k you and your children. [D.S.] made [a] fist at [A.S.'s] daughter who tried to defend [A.S.] from [D.S.]"; (6) in 2014, D.S. "hit [A.S.] in the stomach causing [her] to sustain [three] broken ribs. [A.S.] said she would divorce [D.S.] and [he] told her, 'never'"; (7) in 1992, D.S. tied A.S. to a bed and threatened to mutilate her with a pair of scissors so she could "never be with another man"; (8) in 1994, A.S. "told [D.S.] she wanted to divorce him. [D.S.] grabbed a knife. [A.S.'s] mother would not allow him to get to [A.S.] in the bathroom."; (9) "throughout

3

the relationship, [D.S.] threatened to commit suicide if [A.S.] divorce[d] him and the children will hate her for it"; and (10) in 2012, D.S. "became more aggressive when [A.S.] learned he was living in Russia with another woman."

After a delay due to D.S.'s medical issues, the court ultimately scheduled and presided over a thirty-three-day trial,[2] and on May 17, 2023, dismissed the domestic violence complaint, vacated the TRO, and issued a conforming order that same day.  In a comprehensive oral opinion, the court began by finding A.S. was not a credible witness, noting her "behavior throughout the trial [was] evasive, combative[,] and dishonest . . . [and h]er testimony was contrary to the evidence."

The court found A.S.'s testimony throughout the course of trial demonstrated "anger[,] not fear."  In support of this finding, the court noted A.S. "often refused to respond to [c]ounsel and the [c]ourt's questions.  Rather than directly answering questions posed, [A.S.] monologued regarding her perspective on [D.S.'s] nonpayment of child support.  She interrupted the testimony of other witnesses.  She frequently had outbursts."

---

[2] Due to D.S.'s medical issues and resulting inability to travel, the court initially conducted the trial in a hybrid format with D.S. appearing remotely and A.S. in person.  After A.S. requested to appear virtually due to her own medical issues, the court proceeded to hold the remainder of the trial in an entirely remote format.

The court also explained her "behavior and body language was inconsistent with fear. She was combative, confrontational, aggressive[,] and antagonistic. She called [D.S.] a dumbass." In further support of its finding that A.S. did not fear D.S., the court highlighted the fact she "recruited her daughter to break into [D.S.'s] house in Moscow." According to the court, that evidenced a "lack of fear and render[ed A.S.'s] testimony unreliable."

The court further found A.S. non-credible because she "refused to acknowledge basic information and self-evident facts presented to her." When A.S. was presented with a "clear[]" photograph of herself on a ski slope, the court noted "[s]he was reluctant to acknowledge [the] photo was her." While A.S. attempted to explain her reluctancy to identify herself in the photograph by claiming "she was seeing experts to erase her memories because she hated her past experiences[,]" the court explained if that was in fact true, it could "have no confidence of her recollection of events if she's unable or if she denies seeing herself in a photograph and testifies that she's seeking to have her memories erased." In further support of its credibility findings, the court noted there were multiple instances where A.S. could not recollect critical information and found there were instances where A.S. was "being simply deceitful."

5

The court also found Sarah, the parties' daughter who testified in support of her mother, similarly not credible. Like A.S., the court found her "combative, condescending[,] and evasive. She made her own objections to evidence. She spoke over her own attorney. She was unable to control her emotions. She addressed the [c]ourt and [c]ounsel with angry outbursts rather than thoughtful responses." The court also found Susan, the parties' other daughter who also testified on behalf of A.S., to not be a credible witness and made similar adverse credibility findings with respect to two additional witnesses who testified on A.S.'s behalf.

Conversely, the court found D.S. "to be credible in part." The court noted he "testified in a calm manner. On cross-examination, he was responsive. He did not interrupt [c]ounsel during questioning. He answered questions thoughtfully and asked for clarification when he did not understand."

The court explained it found D.S. "to be credible only in part" because despite repeatedly confirming his voice in recordings, he "refused, however, to acknowledge his voice on one particular occasion. [That] recording appeared no different than the other recordings submitted with [D.S.'s] voice." The court found D.S.'s two witnesses, his lawyer in Russian divorce proceedings and his live-in housekeeper, credible.

A-3285-22

After addressing the credibility of the witnesses, the court concluded A.S. failed to satisfy either prong of the two-part test detailed in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006), by a preponderance of the evidence and denied her request for a FRO.  As to whether, "one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] . . . occurred[,]" id. at 125, the court found A.S. did not establish D.S. committed the predicate acts of assault alleged and did not believe a FRO was "necessary . . . to protect [A.S.] from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b)).

With respect to the second Silver prong, the court explained the parties live in separate countries, D.S. cannot travel for long periods of time due to his medical condition, and D.S. has a new family in Moscow and testified he had no desire to return to the United States.  The court further found A.S. repeatedly attempted to "antagonize" D.S. throughout the course of trial and noted an incident where she traveled to Moscow with her daughter to break into D.S.'s home.

The court accordingly dismissed A.S.'s complaint and vacated the TRO. This appeal followed, in which A.S. raises the following arguments:

> I.  THE TRIAL COURT DISMISSED PLAINTIFF'S COMPLAINT AGAINST THE WEIGHT OF THE

A-3285-22

EVIDENCE IN A BIASED MANNER, THE DEFENDANT COMMITTED ACTS OF ASSAULT AGAINST PLAINTIFF AND HER CHILDREN[.]

II. THE JUDGE MADE AN ERROR OF LAW AND DID NOT DETERMINE THE BEST INTERESTS OF THE PARTIES AND THE PARTIES UNEMANCIPATED CHILD[.]

When discussing these arguments, A.S. repeatedly maintains the court "misrepresent[ed] the facts" and "against the weight of the evidence, determined that the testimony of [A.S.] and her witnesses lacked credibility," contentions D.S. disputes. After reviewing the parties' arguments against the limited record before us, we are convinced A.S.'s appeal must be dismissed because A.S. failed to provide the relevant transcripts from the thirty-three-day trial.

Our Rules are clear. A stenographic transcript or statement of the proceedings is an essential part of the record on appeal. See R. 2:5-4. As such, an appellant "shall . . . serve a request for the preparation of the [relevant] transcript." R. 2:5-1(g). Unless otherwise excepted, "the transcript shall include the entire proceedings in the court . . . from which the appeal is taken . . . ." R. 2:5-3(b). Rule 2:5-3(c) allows for the abbreviation of the transcript by consent or order of the trial court.

We do not disturb the "'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or

A-3285-22

inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). The absence of the trial transcripts makes appellate review of A.S.'s challenges to the court's specific and detailed credibility findings impossible. See Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004). Further, without those transcripts we are unable to determine if we should grant the substantial deference ordinarily given to trial court's findings and the attendant legal conclusions in domestic violence matters. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare, 154 N.J. at 411-12 (1998)); Pascale v. Pascale, 113 N.J. 20, 33 (1988). Simply put, our review of the trial proceedings is particularly relevant and necessary here as A.S.'s arguments relate directly to the accuracy of the testimonial proofs and the court's credibility findings.

In reaching our decision, we fully acknowledge that on June 13, 2024, a different panel denied D.S.'s motion to dismiss the appeal as a result of A.S.'s failure to comply with Rule 2:5-3(b). After an independent review of the parties' briefs and appendices, however, we are convinced for the reasons stated that the testimony contained in the missing trial transcripts, upon which the court's

challenged factual and credibility findings are based, are necessary to review properly the May 17, 2023 order.

In light of our prior order, and to ensure we have an opportunity to consider the merits of the parties' arguments, we will not dismiss the appeal with prejudice as a result of A.S.'s non-compliance with our Rules. Instead, we direct A.S. to order immediately, and obtain within sixty days of the issuance of this opinion, all the transcripts from the thirty-three-day trial. Upon receipt of those transcripts, the Clerk is directed to issue a scheduling order permitting substitute or supplemental briefs that fully comply with our Rules, on an accelerated basis. The appeal shall be calendared as soon as practicable thereafter. A.S.'s non-compliance may result in dismissal of the appeal with prejudice on the court's motion and without further notice.

Our June 13, 2024 order is vacated and the appeal is dismissed without prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION